## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| KRISTIN A. KING,<br><br>      Plaintiff,<br><br>    v.<br><br>STATE OF MAINE, DEPARTMENT OF CORRECTIONS, and<br><br>DAVID D. GARRISON<br><br><br><br>      Defendants. | Docket No.1:13-cv-00163-JDL |

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL
## AND INJUNCTIVE RELIEF SOUGHT

      Kristin A. King complains against the State of Maine, Department of Corrections (DOC) and David D. Garrison as follows:

## SUMMARY OF THE ACTION

      1.      After retiring from a successful 15-year military career, Plaintiff Kristin King worked as a corrections officer at the Downeast Correctional Facility (DCF) for six and a half years. She had a favorable employment record for over four years until her immediate supervisor, Sgt. David Garrison, became aware of her sexual orientation and began targeting her for discipline because he was prejudiced against lesbians. Garrison referred to Officer King by the discriminatory slur "bull dyke." He enlisted other corrections officers to help him catch any mistakes Officer King made and then he relentlessly pursued discipline against her. Sgt. Garrison counseled and disciplined Officer King for commonplace clerical errors and corrections to the

logbook while straight male corrections officers made similar errors but were not disciplined as severely. Straight male corrections officers also committed more serious mistakes including sleeping on the job and allowing inmates to escape but were not disciplined at all or as severely. Officer King, with the help of her union, repeatedly complained that Garrison's unfair discipline of her was unlawful discrimination.

2. Officer King was also denied a temporary light duty position needed for medical reasons when straight male corrections officers were routinely granted such light duty accommodation. Because the DOC refused to return Officer King to light duty work from her medical leave, she was forced to remain on unpaid medical leave and then was laid off for a total of five months. Officer King filed a complaint with the Maine Human Rights Commission explaining that she had been discriminated against on the basis of her sex. After receiving notice of her discrimination complaint, the DOC terminated her employment without allowing her to return to work. As a result of this intentional discrimination and retaliation, Officer King is seeking all available remedies, including back pay and benefits, compensatory damages, injunctive relief, and attorney's fees and expenses.

## PARTIES

3. Plaintiff, Kristin A. King, is a citizen of the United States and is a resident of Jonesboro, Washington County, Maine.

4. Defendant DOC is a department of state government.

4A. Defendant David Garrison was employed by DOC as a Sergeant at DCF during the events at issue in this Complaint. He is being sued in his personal and individual capacity.

## JURY TRIAL DEMAND

5. Under Fed. R. Civ. P. 38(b), Plaintiff demands trial by jury on all issues triable to

a jury.

## JURISDICTION AND VENUE

6. This action arises under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C.A. § 794, Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134, Section 503 of the Americans with Disabilities Act, 42 U.S.C § 12203, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and the Maine Human Rights Act, 5 M.R.S.A. §§ 4551-4634.  This Court has proper subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1341 (federal question) and 1343 (civil rights).

7. Venue is proper in the District of Maine under 28 U.S.C. § 1391(e) (3) because Plaintiff resides in Maine.  Under Rule 3(b) of the Rules of this Court, this action is properly filed in Bangor.

## FACTUAL ALLEGATIONS

8. Plaintiff Kristin A. King became employed by DOC as a night shift correctional officer at DCF on September 1, 2004.

9. Officer King performed her job duties well during her employment and all of her annual performance evaluations, including in October 2010, rated her performance as fully satisfactory.

9A. For example, Officer King's October 2010 annual performance evaluation stated,

in part, that "Officer King has high standard[s] that [were] instilled in her by the military" and "Officer King is extremely even tempered, and always treats everyone in a manner that one would expect to want to be treated."

10. Officer King was the only female corrections officer on the night shift.

11. Officer King was the only openly lesbian corrections officer at DCF.

12. During her employment, she frequently saw pornographic magazines with photographs of naked women in the non-inmate areas of the DCF.

13. Sergeant David Garrison became Officer King's direct supervisor on the night shift.

14. Sergeant Garrison became hostile toward Officer King after he learned of her sexual orientation.

15. Sergeant Garrison reported to Colonel David Daniels.

16. Colonel Daniels reported to Facility Director Scott Jones.

17. The DOC is required to maintain daily count sheets and a logbook that documents all inmate activities in each facility.

18. The corrections officers on duty are required to count inmates at regular intervals and record their counts in the logbook.

19. During each shift, supervisors review the logbook for completeness and accuracy when making their rounds.

20. Errors in inmate counts by correction officers at DCF were routinely discovered by fellow officers, supervisors, and by the Main Control office.

21. When logbooks and paperwork were inspected at DCF and a discrepancy was found regarding inmate counts, the error was crossed out and the correct information was

recorded. The individual making the change initialed the strikeout, and the issue ended there. This correction process happened routinely, and straight male corrections officers were almost never disciplined for such errors.

22. Officer King was treated worse than straight male officers after Sergeant Garrison became aware that she was a lesbian.

23. Rather than treat her like the straight male corrections officers, who were allowed to fix their count errors without discipline, Sergeant Garrison copied her logbook errors and sent them up the chain of command, triggering a series of disciplinary actions against her.

24. For example, on February 20, 2009, Officer King allegedly made two logbook entries that recorded inaccurate inmate counts.

25. On March 1, 2009, Officer King was given a written notice of verbal counseling documenting that she had made two errors in the Dorm III log book on February 20, 2009.

26. Nearly a year later, on January 3, 2010, Officer King allegedly failed to take one inmate count. During the same shift, she allegedly recorded an inaccurate count.

27. On January 12, 2010, Officer King was given another counseling form by Sergeant David Garrison. He brought another male officer with him when he delivered the discipline, and Officer King reasonably perceived this as intended to intimidate and humiliate her.

28. The January 12 discipline states that "[t]here have been 6 incidents since January 8, 2009." When Officer King asked what those incidents referred to, Sergeant Garrison told her that he "would speak to the captain about getting copies of these sheets but that she should already have copies." She did not already have copies and she was never provided copies.

5

29. Ten months later, on November 10, 2010, Officer King again allegedly made more count errors in the logbook.

30. Sergeant Garrison again confronted Officer King about her alleged errors, and Officer King made corrections in the logbook.

31. The next day, on November 11, 2010, Officer King allegedly recorded another inaccurate count.

32. Again, Sergeant Garrison reported Officer King's errors up the chain of command, and she was sent a notice on November 22, 2010, that a disciplinary fact finding hearing was set for November 30, 2010.

33. Officer King was suspended for two days as discipline resulting from the November 30 disciplinary hearing.

34. Officer King again allegedly made count errors on January 16, 2011 and February 8, 2011 and was reported up the chain of command both times by Sergeant Garrison.

35. On January 18, 2011, Officer King received notice that another fact-finding hearing was to be held on February 3, 2011, concerning the January 16 errors.

36. On February 3, a fact-finding hearing was held, at which both Officer King and her union representative Jim Dolan expressed repeated concerns that Officer King was being singled out for inmate count errors and that other male officers were allowed to correct their inmate count mistakes without discipline being issued.

37. During this hearing and at other times, Officer King and union representative Jim Dolan reported their concern that the ongoing discipline of Officer King was unlawful discrimination.

38.     Only five days later, on February 8, Officer King received yet another notice that a third fact-finding hearing was to be held on February 14, 2011 concerning the alleged errors she made on February 8.

39.     As of February 2011 (and continuing to the present), Officer King suffered from depression and anxiety.

40.     As of February 2011 (and continuing to the present), these mental impairments substantially limited her major life activities, including interacting with others and working. They also had an actual or expected duration of more than 6 months and impaired health to a significant extent as compared to what is ordinarily experienced in the general population.

41.     Triggered by the repeated unfair and discriminator disciplinary actions against her and the hostile and abusive work environment, as of February 8, 2011 she was experiencing debilitating panic and anxiety attacks, along with migraines and insomnia.

42.     Many male corrections officers had made much more serious errors in their employment and were not disciplined so strictly.  For example, in addition to the routine logbook errors, male officers had been caught sleeping on the job and had allowed inmates to escape.

43.     On February 9, 2011, Officer King needed to take a brief medical leave to seek treatment for her depression and anxiety.  She called in sick to work on February 13, 2011 and informed Sergeant Garrison that she planned to return to work on February 16, 2011.

44.     Sergeant Garrison then informed Officer King that he would postpone the fact-finding hearing set for February 14 until she was able to return to work.  He reset the hearing for February 28, 2011.

45.     The hearing was not held on February 28 as planned, because Officer King needed a longer medical leave of absence than she originally planned.

46. She was cleared to return to work by her healthcare provider on March 15, 2011, and her healthcare provider faxed a written request on that date to DCF that it place her on a light duty status. Her healthcare provider listed restrictions on her ability to work, such as low stress and low auditory and visual stimulation.

47. Light duty positions in the control room and segregation unit at DCF existed that met her restrictions and that she could have performed.

48. Several male corrections officers had been placed in light duty positions in the Main Control Room or Segregation Unit during Officer King's employment.

49. Officer King's healthcare provider supported her return to work in one of the light duty positions.

50. The DCF did not respond to Officer King's March 15 doctor's note, and no one with the DOC contacted Officer King to discuss her restrictions or whether there was an available light duty position.

51. On or about June 4, Officer King wrote to DCF again asking to be permitted to return to work in a light duty capacity.

52. Another month went by with no response from DCF.

53. On June 30, Officer King filed a charge of discrimination with the Maine Human Rights Commission and federal Equal Employment Opportunity Commission explaining that she had been subjected to discrimination based on sex. Officer King reasonably believed that the DOC's actions in unfairly disciplining her, subjecting her to a hostile and abusive work environment, and refusing to return her to work in a light duty capacity violated the Maine Human Rights Act by subjecting her to different terms and conditions of employment because of her sex.

54. On July 8, 2011, DCF's Administrative Manager, Tim Cobb wrote to Officer King requesting that she provide a note from her health care provider confirming that she could perform the light duty Main Control office duties.

55. In response to Mr. Cobb's July 8, 2011 correspondence, Officer King asked her healthcare provider to again provide a letter to DCF that she was cleared to return to work in light duty capacity.

56. In response, her healthcare provider wrote to DCF on August 9, 2011, stating that "As I stated in my M1 form (dated: 5/23/11) and in my letter (dated: 3/24/11) that I faxed to your office, Ms. King meets the qualifications in the attached document when I released her to light duty on those two previous dates, and is currently able to return to work within the guide lines of the light duty post."

57. Because DCF would not permit her to return to work in light duty capacity, Officer King was forced to stay out of work for nearly five months without any income.

58. DCF placed Officer King on unpaid Family and Medical Leave from March 30, 2011 to May 7, 2011. It then placed Officer King on unpaid layoff status from May 8, 2011 to August 31, 2011.

59. DCF received notice of Officer King's Maine Human Rights Commission complaint prior to August 31, 2011.

60. DCF wrote to Officer King on August 31, 2011 advising her that she was being placed on paid administrative leave pending completion of the fact-finding hearing previously scheduled for February 2011.

61. A fact-finding hearing was held by DCF on September 8, 2011.

9

62. On September 15, 2011, Officer King received notice that the DOC was proposing termination of her employment. A pre-termination hearing was held on September 20, 2011, and her employment was terminated effective that day.

63. On April 12, 2012, Officer King filed amended complaints to the Maine Human Rights Commission charge of discrimination alleging retaliation and disability discrimination.

64. Kristin King is a qualified individual with a disability because she suffers from depression and anxiety, has a record of depression and anxiety, or was regarded as having or likely to develop depression and anxiety.

65. By letter dated January 31, 2013, the Maine Human Rights Commission issued its Notice of Right to Sue authorizing Kristin King to bring this action.

66. By letter dated April 2, 2013 and received on or about April 3, 2013, the Equal Employment Opportunity Commission issued a Notice of Right to Sue, authorizing Kristin King to bring this action.

67. Plaintiff has satisfied one or more of the prerequisites to be awarded attorney's fees and all available damages under the Maine Human Rights Act.

68. Plaintiff has exhausted her administrative remedies for all claims in this action that require administrative exhaustion.

## LEGAL CLAIMS

### Count I
### (Defendant State of Maine, Department of Corrections: Sex, Sexual Orientation, and Disability Discrimination, and Retaliation)

69. The allegations in paragraphs 1 - 68 are repeated.

70. Based on these allegations, the DOC discriminated against Kristin King with respect to the terms, conditions or privileges of her employment, subjected her to a hostile work environment, and terminated her employment because of her sex and sexual orientation.

71. The DOC engaged in unlawful retaliation under the Maine Human Rights Act when it terminated Kristin King's employment in September 2011 because she filed a charge of discrimination against it and opposed practices that she reasonably believed were violations of the Maine Human Rights Act.

72. The State of Maine Department of Corrections discriminated against Kristin King with respect to the terms, conditions or privileges of her employment and terminated her employment because of her anxiety and depression, or because of her record of having anxiety and depression, or because the State of Maine Department of Corrections regarded her as disabled. The State of Maine Department of Corrections also failed to make reasonable accommodation to her known limitations by providing her with a light duty assignment. The State of Maine Department of Corrections also retaliated against Kristin King for requesting reasonable accommodation for her disability.

73. As a direct and proximate result of Defendant's intentional discrimination and retaliation against Plaintiff, she has suffered and will continue to suffer damages, including, but not limited to, loss of enjoyment of her job and her life, loss of self-confidence and self-respect, humiliation and embarrassment, injury to reputation, back pay and benefits, emotional pain and distress, suffering, inconvenience, mental anguish, and other pecuniary and non-pecuniary losses.

74. Plaintiff requests relief against Defendant State of Maine, Department of Corrections as follows:

(a) Enter declaratory relief that Defendant violated Plaintiff's statutory civil rights to be free of sex and disability discrimination and unlawful retaliation;

(b) Enter injunctive relief ordering Defendant (1) reinstate plaintiff; (2) provide plaintiff with reasonable accommodations for her disabilities; (3) provide effective civil rights training for all managerial employees at DCF on the requirements of all applicable laws prohibiting employment discrimination because of disability, sex, sexual orientation, and unlawful retaliation against employees for requesting reasonable accommodations that must be completed within 60 days of the entry of Judgment for Injunctive Relief.

(c) Award Plaintiff back pay for lost wages and benefits and prejudgment interest thereon, or, in lieu thereof, front pay for future lost wages and benefits;

(d) Award compensatory damages in amounts to be determined at trial by the jury and prejudgment interest thereon;

(e) Award Plaintiff her full costs and reasonable attorney's fees; and

(f) Award such further relief as is deemed appropriate.

## Count II

**(Defendant David D. Garrison: Equal Protection and First Amendment Rights)**

75. The allegations in paragraphs 1 - 74 are repeated.

76. Based on these allegations, Defendant Garrison, while acting under color of state law, violated the constitutional rights of Officer King, including the rights to be free of discrimination based on sex and sexual orientation and the First Amendment right to engage in speech reporting and opposing unlawful discrimination without retaliation.

77. Defendant Garrison acted with actual malice and reckless indifference to the

federally protected civil rights of Officer King.

78. As a result of Defendant's unconstitutional conduct, Kristin King suffered and is continuing to suffer personal injuries, including but not limited to, loss of enjoyment of her job and her life, loss of self-confidence and self-respect, injury to reputation, humiliation and embarrassment, emotional pain and distress, suffering, inconvenience, mental anguish, chilling of constitutional and free speech rights, and other pecuniary and non-pecuniary losses.

WHEREFORE, Kristin King prays for the following relief under 42 U.S.C §1983:

(a) enter declaratory relief that Defendant, while acting under color of state law, violated the constitutional rights of Kristin King;

(b) enter injunctive relief ordering Defendant to undergo effective training and monitoring policies and practices to comply with his obligation to respect the rights of other employees to be free of harassment and discriminant on the basis of sex or sexual orientation;

(c) award compensatory damages in amounts to be determined at trial and prejudgment interest thereon;

(d) award punitive damages in amounts to be determined at trial and prejudgment interest thereon;

(e) award plaintiff her full costs, including reasonable attorney's fees and expert fees; and

(f) award such further relief as deemed appropriate.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date: February 27, 2015 | /s/ David G. Webbert |
|  | David G. Webbert |
|  | /s/ Carol Garvan |
|  | Carol J. Garvan |
|  | JOHNSON, WEBBERT & YOUNF, LLP |
|  | 160 Capitol Street, P.O. Box 79 |
|  | Augusta, Maine  04332-0079 |
|  | Tel:  (207) 623-5110 |
|  | E-Mail: dwebbert@johnsonwebbert.com |
|  | cgarvan@johnsonwebbert.com |

Attorneys for Plaintiff Kristin A. King

14