United States District Court
District Of Maine

| | | |
|---|---|---|
| Kristin A. King, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 1:13-cv-00163-JDL |
| | ) | |
| State Of Maine, Department Of Corrections, | ) ) | |
| | ) | |
| Defendant. | ) | |

**Plaintiff's Reply In Support of Motion**
**for Leave to File First Amended Complaint**

**First**, Defendant concedes in its opposition that its only objection to Plaintiff's First Amended Complaint is "futility" and that this objection "is gauged by the criteria of Rule 12(b)(6)."[1] Thus, as a matter of law, the only issue presented by Defendants' opposition is does the First Amended Complaint "plead facts sufficient to show that" the equal protection and free speech retaliation claims against David Garrison have "substantive plausibility?"[2] As the Supreme Court recently emphasized, a civil rights plaintiff is "required to do no more to stave off threshold dismissal."[3]

The First Circuit has further instructed that "[t]o achieve plausibility, a complaint need not plead facts sufficient to make a prima facie case or allege all facts necessary to succeed at trial."[4] In short, "there is no need to set forth a detailed evidentiary proffer in a complaint."[5] For

---

[1] ECF No. 36 at 1, 6
[2] *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014) (summarily reversing dismissal of civil rights complaint); *see also Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103 (1st Cir. 2014) (reversing dismissal of constitutional free-speech claims); *Garayalde-Rijos v. Municipality of Carolina,* 747 F.3d 15 (1st Cir. 2014) (reversing dismissal of civil rights employment discrimination complaint).
[3] *Johnson v. City of Shelby*, 135 S. Ct. at 347 .
[4] *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014).
[5] *Id*. (citation omitted).

purposes of a motion to dismiss, a plaintiff "need not establish" causation but rather only has to allege facts showing "that the claim of causation is plausible" with respect to each defendant.[6] Direct evidence of causation is unnecessary at the pleading stage.[7] Instead, "telltale clues may be gathered from the circumstances surrounding the adverse employment action."[8]

The First Circuit greatly disfavors the dismissal of § 1983 claims on causation grounds. For example, that Court recently reversed the dismissal of a free speech retaliation claim regarding the denial of an application for a license even though it was undisputed that the plaintiff missed a filing deadline for the application.[9] The First Circuit explained that even when a nondiscriminatory reason is admitted by the plaintiff, the complaint may still plausibly allege based on other facts "that retaliatory animus was a substantial or motivating factor" in the adverse action.[10] Causation is especially uncertain when there is room for discretion in deciding whether or not to take an adverse action based on the nondiscriminatory reason.[11]

**Second**, the First Amended Complaint contains facts that are more than sufficient to show that Sgt. David Garrison is a plausible defendant regarding both Corrections Officer King's equal protection claim of discrimination because she is a lesbian and her First Amendment claim of retaliation because she complained about that invidious discrimination. For example, the First Amended Complaint alleges that Garrison referred to his subordinate King by the discriminatory slur "bull dyke."[12] And that Garrison singled her out for unfair discipline and referred his

---

[6] *Id*. at 111 (citation omitted).
[7] *Id.*
[8] *Id*.
[9] *Maloy* v. *Ballori-Lage*, 744 F.3d 250 (1st Cir. 2014).
[10] *Id*. at 253.
[11] *Id*.
[12] First Amended Complaint ¶ 1.

discipline up the chain of command in order to trigger a series of adverse actions culminating in her firing.[13]

The common-sense clues in the First Amended Complaint supporting the plausibility of the claims against Garrison include the following:

- After retiring from a successful 15-year military career, Kristin King worked as a corrections officer at the Downeast Correctional Facility (DCF) for six and a half years.[14]

- King was the only female corrections officer on the night shift.[15]

- King was the only openly lesbian corrections officer at DCF.[16]

- King had a favorable employment record for over four years until Garrison became aware of her sexual orientation and began targeting her for discipline because he was prejudiced against lesbians.[17]

- King, with the help of her union, repeatedly complained that Garrison's unfair discipline of her was unlawful discrimination.[18]

- Garrison reported to Colonel David Daniels, who in turn reported to Facility Director Scott Jones.[19]

- Garrison enlisted other corrections officers to help him catch any mistakes King made and then he relentlessly pursued discipline against her.[20]

- Beginning in February 2009, Garrison repeatedly counseled and disciplined King for commonplace clerical errors and corrections to the logbook while straight male

---

[13] *Id.* ¶¶ 1, 22-35, 38, 61-62.
[14] *Id.* ¶ 1.
[15] *Id.* ¶ 10.
[16] *Id.* ¶ 11.
[17] *Id.* ¶ 1.
[18] *Id.*
[19] *Id.* ¶¶ 15-16.
[20] *Id.* ¶ 1.

3

corrections officers made similar errors but were not disciplined as severely.[21]

- Rather than treat her like the straight male corrections officers, who were allowed to fix their count errors without discipline, Garrison copied her logbook errors and sent them up the chain of command, triggering a series of disciplinary actions against her.[22]

- Straight male corrections officers also committed more serious mistakes including sleeping on the job and allowing inmates to escape but were not disciplined at all or as severely.[23]

- In November 2010 Garrison reported King's alleged errors up the chain of command, and those reports led to her two-day suspension.[24]

- King allegedly made count errors on January 16, 2011 and February 8, 2011 and was reported up the chain of command both times by Sergeant Garrison.[25]

- During a February 3, 2011 disciplinary hearing and at other times, King reported her concern that the ongoing discipline was unlawful discrimination.[26]

- Only five days later, on February 8, King received notice of a fact-finding hearing set for February 14 concerning alleged errors she made on February 8.[27]

- King began a medical leave on February 13, 2011 and never returned to work.[28]

- The disciplinary hearing originally scheduled by Garrison for February 14, 2011 was ultimately held on September 8, 2011.[29]

- On September 15, 2011, Officer King received notice that the DOC was proposing

---

[21] *Id.* ¶¶ 1, 23-35, 38, 61-62.
[22] *Id.* ¶ 23.
[23] *Id.* ¶ 1.
[24] *Id.* ¶¶ 29-33.
[25] *Id.* ¶ 34.
[26] *Id.* ¶¶ 36-37.
[27] *Id.* ¶ 38.
[28] *Id.* ¶¶ 43-57-62.
[29] *Id.* ¶¶ 43-45, 60-61.

termination of her employment.  A pre-termination hearing was held on September 20, 2011, and her employment was terminated effective that same day.[30]

**Third**, the facts alleged in the First Amendment Complaint plausibly alleges that Garrison played a substantial factor in getting King fired because of her sex and sexual orientation and because of her complaints about his discriminatory discipline. Being fired is clearly a sufficient adverse action in an employment case brought under § 1983.[31]

It is well settled that state actors may be liable under § 1983 for their involvement in adverse actions even if they are not the ultimate decisionmakers. The First Circuit has explained that the causal connection required under § 1983 "can be established not only by some kind of [] personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury."[32] In other words, a defendant is legally "responsible for 'those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties.'"[33] In keeping with this line of precedent, the First Circuit vacated the dismissal of § 1983 claims against a defendant when the facts alleged in the complaint gave "rise to the inference that [he] was involved in, if not directly responsible for, the [adverse employment] decision."[34]

---

[30] *Id.* ¶ 62.
[31] *See, e.g.*, *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 106 (1st Cir. 2014) (reinstating dismissed § 1983 employment claims when plaintiffs were not fired but had most of their job responsibilities removed). King was also subjected to the adverse employment actions of a two-day suspension and a campaign of severe harassment, unfair disciplinary allegations, and heightened scrutiny.
[32] *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 50 (1st Cir. 2009) (citation omitted), *quoted in, Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)(vacating dismissal of § 1983 public employee claims).
[33] *Id.* at 51 (citation omitted).
[34] *Rodriguez-Ramos v. Hernandez-Gregorat*, 685 F.3d 34, 42 (1st Cir. 2012) .

The First Amended Complaint plausibly alleges that Garrison "affirmatively set in motion the" discipline process that led to King's termination.[35] Thus, Garrison, is legally responsible under § 1983 as a "primary violator . . . in the rights-violating incident."[36]

**Fourth**, the standard is more lenient for showing an adverse employment action in a § 1983 case compared to a Title VII case.[37] Thus, even "relatively minor events can give rise to § 1983 liability so long as the harassment is not so trivial that it would not deter an ordinary employee in the exercise of his or her First Amendment rights."[38]

**Fifth**, King has also alleged plausible free speech retaliation claims against Garrison. The First Circuit[39] has clarified that on a motion to dismiss the bar is low for what a public employee must allege to proceed with a First Amendment claim:

> In short, while we cannot conclusively say that Plaintiff's speech was made as a citizen, the scope of our review on a motion to dismiss does not demand as much; it is sufficient that the complaint alleges facts that plausibly set forth citizen speech. See *Sepúlveda-Villarini v. Dep't of Educ. of P.R.*, 628 F.3d 25, 30 (1st Cir. 2010) (Souter, J.) ("A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . .").

King alleges that she made repeated internal complaints about the discriminatory actions by Garrison, including on February 3, 2011. Only 5 days later, Garrison retaliated by scheduling another disciplinary hearing, which turned out to be the one that led directly to her firing. This suspicious timing is highly probative of retaliation by Garrison and much more evidence than

---

[35] *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 51 (1st Cir. 2009).
[36] *Id.* (citation omitted); *see also Wulf v. City of Wichita*, 883 F.2d 842, 864 (10th Cir. 1989) (holding that sufficient personal involvement was found where defendant did not have ultimate authority to fire the plaintiff, but his recommendation was relied upon "to some extent" by ultimate decisionmakers); *Johnson v. Duffy*, 588 F.2d 740, 743-744 (9th Cir. 1978) (§ 1983 liability can be established not only by "some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury").
[37] *Leahy-Lind v. Me. HHS*, 2014 U.S. Dist. LEXIS 131430 (D. Me. Sept. 19, 2014)(denying motion to dismiss state employee's First Amendment retaliation claim).
[38] *Barton v. Clancy*, 632 F.3d 9, 29 (1st Cir. 2011) (quotations and citations omitted).
[39] *Decotiis v. Whittemore*, 635 F.3d 22, 35 (1st Cir. 2011)(reversing dismissal order).

necessary to survive a motion to dismiss. It is also too early in the case for the Court to rule on whether King's internal complaints, along with her union, challenging invidious discrimination by a supervisor at a correctional facility were about a matter of public concern.[40]

**Sixth**, Defendant's qualified immunity defense fails because as of 2009 the law was settled in the First Circuit that a state supervisor is liable under § 1983 if he acts with an unconstitutional motive to "affirmatively set in motion" an adverse employment action for a subordinate. Defendant also repeats the same incorrect legal and factual assumptions from its earlier arguments.[41]

Date:   April 7, 2015                                   Respectfully submitted,

/s/ David G. Webbert
David G. Webbert, Esq.
Carol J. Garvan
JOHNSON, WEBBERT & YOUNG, L.L.P.

160 Capital Street, P.O. Box 79
Augusta, Maine 04332-0079
(207) 623-5110
dwebbert@johnsonwebbert.com
cgarvan@johnsonwebbert.com

*Attorneys for Plaintiff*

---

[40] *See, e.g.*, *Sousa v. Roque*, 578 F.3d 164, 175 (2d Cir. 2009)( rejecting district court determination that public employee's speech was not on "a matter of public concern" solely because the employee "was motivated by his employment grievances"); *Cromer v. Brown*, 88 F.3d 1315, 1326 (4th Cir. 1996)("Of course, the allegations themselves, about racial discrimination within a law enforcement agency, are matters of serious public import."); *Rode v. Dellarciprete*, 845 F.2d 1195, 1201 (3d Cir. 1985) (holding that allegations of racial animus within the state police raised a matter of "grave public concern"); *Connick v. Myers*, 461 U.S. 138, 148 n. 8 (1983) (characterizing allegations of racial discrimination in the assignment of school personnel as "a matter inherently of public concern."); *Givhan v. Western Line Consol. Sch. Dist.*, 439 U.S. 410, 415-16, (1979) ("Neither the [First] Amendment itself nor our decisions indicate that [the] freedom [of speech] is lost to the public employee who arranges to communicate privately with his employer rather than to spread his views before the public.").

[41] King is prepared to amend her complaint further if the Court finds that more factual support is necessary to withstand a motion to dismiss *See, e.g.*, *Johnson,* 135 S. Ct. at 347 (ruling that civil rights plaintiffs "should be accorded an opportunity to add to their complaint" allegations for "clarification"). For example, Plaintiff has a solid factual basis to allege, *inter alia*, that Garrison was present at the disciplinary hearings on September 8 and February 3, 2011 and on November 30, 2010, that his reports about King were relied upon in making the decision to fire her, and that King made internal discrimination complaints about Garrison dating back to January 2010 and February 2009.

Certificate of Service

I hereby certify that on April 7, 2015 I electronically filed Plaintiff's Reply with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

    Kelly L. Morrell, Assistant Attorney General
    kelly.l.morrell@maine.gov


Date: April 7, 2015                              /s/ David G. Webbert