UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| KRISTIN A. KING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13-cv-00163-JDL |
| | ) | |
| MAINE DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF DECISION**

In this action, Plaintiff Kristin A. King alleges that Defendant Maine Department of Corrections discriminated against her in connection with her employment.  More specifically, Plaintiff alleges discrimination based on gender, sexual orientation, and her disability status. Plaintiff also contends that Defendant failed to provide her with a reasonable accommodation for her disability, and retaliated against her for seeking an accommodation.

The matter is before the Court on Plaintiff's Motion to Amend the Complaint (ECF No. 34).[1]  Through her motion, Plaintiff seeks to add her former supervisor, David D. Garrison, as an additional party defendant on a new claim under 42 U.S.C. § 1983 for the deprivation of her constitutional rights.

As explained below, following a review of the pleadings, and after consideration of the parties' arguments, the Court grants Plaintiff's Motion.

---

[1] The Court referred the motion to amend, thereby designating the undersigned to determine the matter pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 72(a).  *See Maurice v. State Farm*, 235 F.3d 7, 9 n.2 (1st Cir. 2000) (reviewing motion to amend complaint to add additional count).

**Background**

Plaintiff Kristin King worked for Defendant at its Downeast Correctional Facility for six and a half years.  According to Plaintiff, her immediate supervisor at the Facility, Sgt. David Garrison, targeted Plaintiff for discipline because of Plaintiff's sexual orientation.  Garrison would counsel and discipline Plaintiff for commonplace clerical errors that were not similarly addressed when committed by heterosexual male corrections officers.  Plaintiff maintains that certain male officers committed more serious infractions and were not disciplined, or not disciplined as severely as she was for only minor infractions.  Garrison would also refer to Plaintiff with a discriminatory slur.  (Proposed Am. Compl. ¶ 1.)

Garrison instituted disciplinary measures in connection with errors that Plaintiff made with "inmate counts" entered into the Facility's logbook.  As alleged, errors in the count occurred routinely.  When errors were discovered, ordinarily, the correct information was inserted into the logbook without incident.  (*Id.* ¶¶ 18-21.)  "[S]traight male corrections officers were almost never disciplined for such errors."  (*Id.* ¶ 21.)  After learning of Plaintiff's sexual orientation, Garrison began to copy her logbook errors and send them up the chain of command, which resulted in a series of disciplinary actions against Plaintiff.  (*Id.* ¶ 23.)  After an unspecified number of such errors over a period of more than two years, Garrison's reports to his superiors resulted in three fact-finding hearings for Plaintiff, a two-day suspension in December 2010, and the termination of Plaintiff's employment effective September 20, 2011.  (*Id.* ¶¶ 24-33, 61, 62.)

Plaintiff asserts that during this time period, she challenged the disciplinary hearings as discriminatory, with support from her union representative (*id.* ¶¶ 36-37); succumbed to severe depression and anxiety that substantially limited her major life activities, including interacting with others and working (*id.* ¶ 39); required disability-related leave to address panic attacks, migraines,

and insomnia, which was granted (*id.* ¶¶ 41, 43); required a return to work accommodation, which was neither granted nor responded to, although several male officers had received such accommodations during King's tenure (*id.* ¶¶ 46, 48, 50-52); and was out of work for nearly five months without pay (*id.* ¶ 57).

On June 30, 2011, shortly before her termination from employment, Plaintiff filed a charge of discrimination with the Maine Human Rights Commission.  (*Id.* ¶ 53.)  Defendant received notice of the filing prior to August 31, 2011.  (*Id.* ¶ 59.)  Defendant wrote Plaintiff on August 31, 2011, and advised Plaintiff that she was being placed on paid administrative leave pending completion of the fact-finding hearing previously scheduled for February 2011." [2]  (*Id.* ¶ 60.)  The hearing occurred on September 8, 2011.  On September 15, 2011, Defendant notified Plaintiff that as the result of the fact-finding hearing, termination of her employment was proposed.  Plaintiff had a pretermination hearing on September 20, 2011, and Defendant terminated her employment effective that day.  (*Id.* ¶¶ 61-62.)

In support of her proposed § 1983 claim against Sgt. Garrison, Plaintiff alleges that Garrison, "while acting under color of state law, violated the constitutional rights of Officer King, including the rights to be free of discrimination based on sex and sexual orientation and the First Amendment right to engage in speech reporting and opposing unlawful discrimination without retaliation."  (*Id.* ¶ 76.)

---

[2] Defendant placed Plaintiff on family and medical leave from March 30, 2011, to May 7, 2011, and characterized Plaintiff as having "unpaid layoff status" for the period from May 8, 2011, to August 31, 2011.  (Proposed Am. Compl. ¶ 58.)

**Discussion**

Defendant objects to Plaintiff's Motion to Amend on the ground that the proposed § 1983 claim against David Garrison is "futile." (Def.'s Mem. in Opp'n to Pl.'s Mot. for Leave to File First Am. Compl., ECF No. 36) ("Opposition").

**A.     *The Motion to Amend Standard***

Rule 15(a)(1) of the Federal Rules of Civil Procedure permits a litigant to amend a pleading "as a matter of course" subject to certain time constraints. However, when a party seeks to amend a complaint more than 21 days after the filing of a responsive pleading, the other party's consent or leave of court is required in order to amend the complaint. Fed. R. Civ. P. 15(a)(2). In such a case, the court is to grant leave to amend "freely" when "justice so requires." *Id.*

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182 (1962). To determine whether Plaintiff's proposed amendment would state a claim, the Court must "assume the truth of all well-plead facts and give the plaintiff[] the benefit of all reasonable inferences therefrom." *Blanco v. Bath Iron Works Corp.*, 802 F. Supp. 2d 215, 221 (D. Me. 2011) (quoting *Genzyme Corp. v. Fed. Ins. Co.,* 622 F.3d 62, 68 (1st Cir. 2010)). To state a claim, Plaintiff must establish that her allegations raise a plausible basis for a fact finder to conclude that the proposed defendant, David Garrison is legally responsible for the alleged claims. *Id.*

**B.     *Analysis***

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts capable of supporting a plausible finding that a defendant, acting under color of state law, deprived her of a

right secured by the Constitution or laws of the United States.  *Goldstein v. Galvin*, 719 F.3d 16, 24 (1st Cir. 2013).  Section 1983 of the Civil Rights Act does not confer any substantive rights; the rights that are vindicated in the action have to arise under another federal statute or constitutional provision.  *Baker v. McCollan,* 443 U.S. 137, 144 n. 3 (1979).  Ordinarily, when a section 1983 claim is presented, the first step is "to identify the specific constitutional right allegedly infringed."  *Albright v. Oliver,* 510 U.S. 266, 271 (1994).  Here, the specific constitutional rights are Plaintiff's rights under the Equal Protection Clause and the Due Process Clause of the Fourteenth Amendment.[3]

1.     *Equal protection*

The Fourteenth Amendment provides that no State shall "deny to any person ... the equal protection of the laws."  U.S. Const. Amend. XIV.  To state a claim for violation of equal protection, the plaintiff must allege that she was treated differently than were others similarly situated, and that the difference in treatment was based on an impermissible consideration.  *Ayala-Sepulveda v. Municipality of San German*, 671 F.3d 24, 32 (1st Cir. 2012).  Additionally, when § 1983 is used as a parallel remedy to a statutory discrimination claim, "the prima facie elements to establish liability are the same under both statutes."  *Rivera v. Puerto Rico Aqueduct & Sewers Auth.*, 331 F.3d 183, 192 (1st Cir. 2003).  The prima facie elements of a sex discrimination claim based on adverse employment action are:  (1) membership in a protected class; (2) sufficient qualifications for the job; (3) an adverse employment action; and (4) a causal connection between element 1 and element 3.[4]  *Bhatti v. Trustees of Boston Univ.*, 659 F.3d 64, 70 (1st Cir. 2011).

---

[3] "[Section] 1983, which was enacted pursuant to the authority of Congress to enforce the Fourteenth Amendment, prohibits interference with federal rights under color of state law."  *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982).

[4] In some cases, the fourth element is described as requiring an assertion that the position remained open or was filled by someone with similar qualifications.  *Kosereis v. Rhode Island*, 331 F.3d 207, 213 (1st Cir. 2003).  Defendant's objection is not based on the absence of an allegation that Plaintiff's position remained open after her termination.

Individual supervisory officers who "*directly* engaged in sexual harassment or sexual discrimination [are] subject to section 1983 liability." *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 901 (1st Cir. 1988).  To be held liable for any particular deprivation, the officer's conduct must have caused the alleged deprivation.  *Id.* at 902.

Defendant argues that Plaintiff has failed to state a claim against Sgt. Garrison because, as alleged, Garrison merely counseled Plaintiff and reported Plaintiff's errors up the chain of command.  (Opposition at 7.)  Defendant argues that Sgt. Garrison's actions do not constitute adverse employment action and, therefore, Garrison cannot be liable on this theory.[5]   (*Id.*)  Defendant additionally argues that the allegations do not describe a "hostile work environment." (*Id.* at 8.)

Although Plaintiff does not allege that Garrison had the authority to terminate Plaintiff's employment, the gravamen of Plaintiff's complaint is that without Garrison's animosity toward her based on her sexual orientation, which animosity resulted in multiple reports against her regarding conduct for which other officers would not be reported, Plaintiff would not have been subjected to the scrutiny that resulted in the termination of her employment.  "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010).  Plaintiff's allegations raise a plausible inference that Garrison's individual conduct directly led to the alleged deprivation, *i.e.*, that Garrison set in motion a series of acts by others that he reasonably could calculate would cause

---

[5] The cases cited by Defendant support the proposition that counseling sessions, reprimands and warnings that do not lead to changes in the terms and conditions of employment are not adverse employment actions.  However, the cases do not address claims against a supervisor for reprimands that cause adverse employment actions.  *See Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 602 (7th Cir. 2009); *Davis v. Town of Lake Park*, 245 F.3d 1232, 1240 (11th Cir. 2001); *Weeks v. New York State*, 273 F.3d 76, 86 (2d Cir. 2001).

others to inflict the constitutional injury in question.  *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 16 (1st Cir. 2011).

Defendant also argues that Plaintiff's allegations do not support a claim based on a hostile work environment.  (Opposition at 8-9.)  "When determining whether a work environment is hostile, the court considers all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Ayala-Sepulveda v. Municipality of San German*, 671 F.3d 24, 31 (1st Cir. 2012) (internal quotation marks omitted).  "None of these factors is individually determinative of the inquiry."  *Id.*

Although the hostile work environment standard takes into consideration "all the circumstances," Plaintiff is not required at the pleading stage to set forth a detailed itemization of all of the facts and circumstances in order to state a claim.  For purposes of notice pleading, Plaintiff's allegations regarding the use of a homophobic slur coupled with a pattern of disparate treatment based on sexual orientation are sufficient to demonstrate the plausibility of Plaintiff's proposed claim.

### 2.     *First amendment retaliation under the Due Process Clause*

"A government employee should not suffer reprisal from a government official for engaging in protected speech because of the possible chilling effect against the free exercise of constitutional rights."  *Rosaura Bldg. Corp. v. Municipality of Mayaguez*, 778 F.3d 55, 66 (1st Cir. 2015).  In light of this principle, claims of workplace retaliation are cognizable under § 1983.  *Id.* In this way, "[t]he First Amendment, incorporated against the states through the Fourteenth Amendment, shields government employees from retaliation for engaging in protected speech." *Diadenko v. Folino*, 741 F.3d 751, 755 (7th Cir. 2013).

To establish a prima facie case of retaliation, a plaintiff must show: (1) she engaged in protected speech; (2) she suffered an adverse employment action; and (3) a causal nexus exists between the protected conduct and the adverse action.  *Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014).  Defendant argues that Plaintiff's allegations do not suffice because (1) her speech activity did not address a matter of public concern, and (2) Sgt. Garrison's conduct occurred before Plaintiff engaged in her alleged speech activity.  (Opposition at 9-12.)

"If [a] plaintiff's speech is not on a matter of public concern, there is no First Amendment cause of action."  *Rosaura Bldg. Corp.*, 778 F.3d at 66-67.  "Therefore, it is vital for any claim to clearly present the protected activity on which it is premised."  *Id.* at 67.  In this case, Plaintiff identifies her relevant speech activity as "speech reporting and opposing unlawful discrimination." (Proposed Am. Compl. ¶ 76.)  Plaintiff maintains that she engaged in protected speech through repeated internal complaints about Garrison's discriminatory actions, including on February 3, 2011.  In particular, in the proposed amended complaint, Plaintiff alleges:

> 36.  On February 3, a fact-finding hearing was held, at which both Officer King and her union representative Jim Dolan expressed repeated concerns that Officer King was being singled out for inmate count errors and that other male officers were allowed to correct their inmate count mistakes without discipline being issued.

> 37.  During this hearing and at other times, Officer King and union representative Jim Dolan reported their concern that the ongoing discipline of Officer King was unlawful discrimination.

(Proposed Am. Compl. ¶ 36.)  Plaintiff's reliance on speech that occurred on or around February 3, 2011, is sufficient to refute Defendant's challenge based on the timing of Plaintiff's speech activity.  The remaining issue is whether the alleged speech addressed a matter of public concern.

Speech involves matters of public concern when it relates to any matter of political, social, or other concern to the community, or is a subject of general interest and of value and concern to

the public. *Lane v. Franks*, 134 S. Ct. 2369, 2380 (2014). Content, form, and context are relevant to the inquiry. *Id.*

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick v. Myers,* 461 U.S. 138, 147 (1983). When an employee raises "a matter of interest to the community" that bears on her own personal employment situation, her personal interest makes it no less essential that she "be able to speak out freely without fear of retaliatory dismissal." *Id.* at 149 (identifying one question on an intra-office questionnaire as raising a matter of public concern, which question asked whether assistant district attorneys ever feel pressured to work on the political campaigns of office-supported candidates).

Here, Plaintiff's expression of her view that Defendant conducted the disciplinary fact-finding hearings based on discriminatory animus is suggestive of a topic of public concern, *i.e.*, whether sexual orientation is a legitimate basis for disparate treatment in employment matters. Undoubtedly, "there is a demonstrated interest in this country" on that topic. *Id.* at 149. Additionally, Plaintiff's statements arguably raised a controversy regarding the political dimension of her public persona as a lesbian. *See id.* at 144-45 (noting that the public concern standard was developed in the context of a history of denying public employment on the basis of prior associations). Stated otherwise, "if released to the public," such statements would be of public concern. *Id.* at 148.[6] Plaintiff thus has stated facts to support a retaliation claim.

---

[6] The Supreme Court noted that the "right to protest racial discrimination—a matter inherently of public concern—is not forfeited by [the plaintiff's] choice of a private forum." *Connick*, 461 U.S. at 148 n.8 (citing *Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415-16 (1979)). In *Givhan*, the employee did not voice her protest in connection with any personal workplace grievance. However, the case supports the proposition that statements made only inside the workplace may support a claim even though they are not shared with the general public. *Givhan*, 439 U.S. at 415-16 ("Neither the [First] Amendment itself nor our decisions indicate that this freedom is lost to the public employee

*3.      Qualified immunity*

Defendant argues that the proposed § 1983 claims against Sgt. Garrison are futile because Garrison is shielded by qualified immunity.  (Opposition at 13-15.)

The Supreme Court's qualified immunity doctrine shields government officials from liability for civil damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Wood v. Moss*, — U.S. —, —, 134 S. Ct. 2056, 2066-67 (2014) (quoting *Ashcroft v. al–Kidd,* 563 U.S. —, —, 131 S. Ct. 2074, 2080 (2011)).  Qualified immunity thus protects government officials "who could not reasonably have predicted that their actions would abridge the rights of others, even though, at the end of the day, those officials may have engaged in rights-violating conduct."  *Camilo-Robles v. Zapata*, 175 F.3d 41, 43 (1st Cir. 1999).  The "clearly established" standard "balances ... the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan,* 555 U.S. 223, 231 (2009).  To overcome qualified immunity, a plaintiff must allege facts that demonstrate that it would have been clear to a reasonable officer in the defendant's position that his conduct was unlawful in the situation he confronted.  *Wood*, 134 S. Ct. at 2067; *Saucier v. Katz,* 533 U.S. 194, 202 (2001).

The "clearly established" inquiry "has two aspects."  *Drumgold v. Callahan*, 707 F.3d 28, 42 (1st Cir. 2013).  One "focuses on the clarity of the law at the time of the violation" and the other "focuses more concretely on the facts of the particular case and whether a reasonable defendant

---

who arranges to communicate privately with his employer rather than to spread his views before the public.  We decline to adopt such a view of the First Amendment.").

would have understood that his conduct violated the plaintiff's constitutional rights." *Id*.  The latter inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

In its opposition to the motion to amend, Defendant contends that the concept that a supervisor could be liable for an adverse employment action that the supervisor did not institute was clearly established under the law.[7]  In other words, Defendant argues that Sgt. Garrison could not have reasonably understood that he could be liable for discipline that he did not directly impose.  Defendant's argument is similar to the causation argument discussed earlier.  As explained above, before 2011, the First Circuit recognized supervisory liability for directly causing a constitutional deprivation.  *See*, *e.g.*, *Camilo-Robles v. Zapata*, 175 F.3d 41, 44 (1st Cir. 1999) (referencing the "primary violator or direct participant" means of establishing the individual liability of a supervisory official).  The law, therefore, was clearly established at the time of Sgt. Garrison's alleged actions.  Accordingly, at this stage of the proceedings, the Court cannot determine that the defense of qualified immunity precludes Plaintiff's cause of action.

## CONCLUSION

Based on the foregoing analysis, the Court concludes, contrary to Defendant's argument, that Plaintiff's proposed amended complaint is not futile.  The Court, therefore, grants Plaintiff's Motion to Amend (ECF No. 34).  Plaintiff shall file the Amended Complaint on or before May 12, 2015.

---

[7] *See* Opposition at 14: "King is required to establish that she suffered an adverse action as a direct result of Garrison's conduct." *See also* Opposition at 15: "[T]he First Amendment retaliation claim fails to allege protected activity or adverse action attributable to Garrison."

CERTIFICATE

Any objections to this Memorandum of Decision shall be filed in accordance with Fed. R. Civ. P. 72.

**So Ordered.**

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 5th day of May, 2015.