United States District Court
District Of Maine

| | | |
|---|---|---|
| Kristin A. King, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 1:13-cv-00163-JDL |
| | ) | |
| State Of Maine, Department | ) | |
| Of Corrections, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**Plaintiff's Trial Brief**

I. **Brief Summary of Plaintiff's Claims: Sex and Sexual Orientation Discrimination and Retaliation for Reporting the Discrimination**

A. **Factual Overview**

After retiring from a 16-year military career, in 2004 Kristin King became a corrections officer on the night shift at the Downeast Correctional Facility. When she was fired in September 2011, she was the only female and the only gay uniformed officer. Since then, all of the uniformed correctional officers have been male and all of the correctional officers assigned to the kitchen have been female.

King's six annual performance evaluations were all entirely satisfactory, including her October 2010 evaluation, which did not indicate any problems with her job duty of counting inmates. She never received the

first two steps of progressive discipline for any counting issues but instead her very first discipline was a two-day unpaid suspension based solely on incidents occurring on November 10-11, 2010 (less than a month after her entirely satisfactory annual review with not even an intimation of counting issues).

King began medical leave on February 8, 2011 and never returned to work before she was fired, allegedly solely based on counting errors. King was the only non-probationary correctional officer ever terminated by Director Jones, during his over ten years in that position as the top official at the DCF.

Garrison, Jones (and the management official in the chain of command between them, David Daniels) all testified that the progressive discipline steps, including oral reprimand and written reprimand, had to be followed in sequence before a suspension could be imposed regarding counting errors.

Correctional officers that worked alongside Kristin have testified that her supervisor, Defendant Sgt. David Garrison, and most of her male co-workers regularly made slurs about Ms. King's sex and sexual orientation because they did not like lesbians in general and did not think women should be working at DCF as correctional officers; and that they created a hostile work environment for her, including mocking her intelligence and size,

denying her normal backup and support and targeting her for higher standards and more scrutiny and discipline than her coworkers.

Garrison targeted her because of her sex or sexual orientation by directing others to report, and then reporting, King's errors, leading to her firing for errors that did not give rise to serious discipline or termination when committed by male officers. Two correctional officers testified at their depositions that they personally observed Garrison instructing Ms. King's co-workers to look for and report inmate count mistakes by her.

A 14-year correctional officer testified at his deposition that most of the correctional officers on Ms. King's night shift were homophobic and had negative attitudes toward gay men and lesbian women. He also testified at his deposition that Ms. King's inmate count errors were not unusual and did not warrant the uniquely severe discipline imposed on her.

Sgt. Garrison's ex-wife testified at a deposition reluctantly and only after being formally served with a subpoena. She testified unequivocally that she and her daughter both clearly recall a hateful, discriminatory slur that Sgt. Garrison made in about April 2011, the same year King was fired: Sgt. Garrison commented to Ms. Todd that "I work with a bull dyke." When asked by the DOC if he made the bull dyke statement, Garrison "stated he may have." The DOC decided that this admission of reprehensible hate speech

3

against lesbians did not warrant any discipline whatsoever, not even an investigation, not even a counselling.

### B. Legal Claims

Ms. King claims that the DOC unlawfully discriminated against her in three separate ways: (1) created a hostile work environment for her, including being denied normal backup and support and being targeted for higher standards and more scrutiny and discipline than her coworkers: (2) suspended her without pay; and (3) terminated her employment. Ms. King claims that this discrimination was based on one or more of the following three unlawful factors: (1) her status as a woman; (2) her status as a gay woman; and (3) one or more complaints by her about the discrimination against her.

Ms. King also has similar claims against Garrison, namely that he unlawfully discriminated against her by (1) by creating a hostile work environment for her, including by targeting her for more scrutiny and discipline than her coworkers; and taking actions that directly led others to (2) suspend and (3) terminate her employment. Ms. King claims that Mr. Garrison's discrimination against her was based on one or both of the following two unlawful factors: (1) her status as a gay woman; and (2) one or more complaints about the discrimination against her.

## Points of Law

First, Ms. King's proof of pretext, other than the anti-women and anti-lesbian statements, consists "principally of evidence that, in [suspending her] and later terminating h[er] employment, [DOC] deviated from its established policies and practices" regarding progressive discipline for negligent counting errors. *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 466-467 (1st Cir. 1996). The First Circuit has repeatedly held that "such irregularities" may be sufficient, as a matter of law, to prove pretext and in *Lattimore* held that "although the [deviation] evidence of pretext is thin, disputed and susceptible to varying interpretations, it is sufficient to create a jury question." *Id.* at 467; see also *Brennan v. GTE Gov't Sys. Corp.* 150 F.3d 21, 29 (1st Cir. 1998) ("evidence that standard procedure was not followed is directly relevant to [plaintiff's] burden of demonstrating pretext" and "deviation from established policy or practice" is evidence of pretext); *Acevedo-Parilla v. Novartis Ex-Lax, Inc.*, 696 F.3d 128 143 (1st Cir. 2012) (employer's deviation from progressive discipline procedure is evidence of pretext); *Rhoades v. Camden Nat'l Corp.*, 575 F. Supp. 2d 260, 262-263 (D. Me. 2008) (employer's deviation from standard practice by failing to follow written progressive discipline is evidence of retaliation, citing *Brennan*).

It is absolutely critical to Ms. King's case that this settled rule of law regarding the inference that may be drawn from "such irregularities" be explained to them as part of the Court's instructions. Thus, the single most important jury instruction proposed by Plaintiff is as follows: "If you find that the employer or supervisor has not followed standard policies, practices or procedures, then you may conclude that the offered explanation for the suspension or termination is a false excuse for unlawful discrimination or retaliation."

Second, regarding proof of causation for her statutory claims against the DOC, Ms. King need only prove that one or more of the claimed discriminatory factors had a determinative influence on one or more of the adverse actions she claims; she is not required to show that a discriminatory factor was the sole or "predominant" cause of the adverse action. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993), *cited with approval in*, *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)):

> Whatever the employer's decisionmaking process, a disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome. . . . Once a "willful" violation has been shown, the employee need not additionally . . . prove that age was the predominant, rather than a determinative, factor in the employment decision.

6

*See also Nassar*, 133 S. Ct. at 2533 (some citations omitted) (explaining that "that the ordinary meaning of '"because of"' is '"by reason of"' or '"on account of."' Thus, the "requirement that an employer took adverse action 'because of' age [meant] that age was the 'reason' that the employer decided to act," or, in other words, that "age was the 'but-for' cause of the employer's adverse decision." *See also Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 63-64 and n. 14 (2007) (noting that "because of" means "based on" and that "'based on' indicates a but-for causal relationship"); *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 265-266 (1992) (equating "by reason of" with "'but for' cause")); *Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 45 (1st Cir. 2009) (stating that "plaintiffs must present enough evidence to permit a finding . . . that the adverse employment decision was caused at least in part by a forbidden type of bias.") (citation omitted) (emphasis added), *quoted with approval in*, *Burns v. Johnson*, 829 F.3d 1, 13, 14 (1st Cir. 2016).

<u>Third</u>, the jury may find a discriminatory factor regardless of whether Defendants consciously intended to base the adverse employment action on the discriminatory factor but "simply did so because of unthinking stereotypes or bias." *Burns v. Johnson*, 829 F.3d 1, 13 (1st Cir. 2016) ("The ultimate question is whether the employee has been treated disparately 'because of [sex],'" and "[t]his is so regardless of whether the employer

7

consciously intended to base the [adverse employment action] on [sex], or simply did so because of unthinking stereotypes or bias.") (citation omitted).

Fourth, the causation standard for Plaintiff's Section 1983 claims does not require that she prove that Garrison was the ultimate decisionmaker regarding the suspension or termination but only that his "individual conduct directly led to the alleged deprivation, i.e., that Garrison set in motion a series of acts by others that he reasonably could calculate would cause others to inflict the constitutional injury in question." *King v. Dep't of Corrections*, 1:13-cv-00163-JDL (May 5, 2015) (Recommended Decision) (ECF No. 40) ), at \*\*5-7; *adopted by* ECF No. 46; *King v. Dep't of Corrections*, 1:13-cv-00163-JDL (Order on Summary Judgment) (ECF No. 93), at \*25 ("established that a supervisor who, with an unlawful retaliatory motive, passes on accurate information and a recommendation to discharge a subordinate, may face § 1983 liability. *Tejada-Batista [v. Morales]*, 424 F.3d [97,] 101-03 [1st Cir. 2005]; *see also Do Corp. v. Town of Stoughton*, 2013 WL 6383035,at \*11 (D. Mass. Dec. 6, 2013)").

Fifth, in proving her hostile work environment claim, Ms. King can rely on "[i]ncidents of nonsexual conduct—such as work sabotage, exclusion, denial of support, and humiliation." *O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir. 2001).

8

## Evidentiary Issues

Under the Court's Confidentiality Order (ECF No. 49), the parties are working cooperatively regarding the use of documents marked confidential in discovery and do not currently anticipate the need for the Court to resolve any disputes regarding such documents.

Date:   November 3, 2016                     Respectfully submitted,


                                            /s/ David G. Webbert
                                            David G. Webbert, Esq.
                                            Carol J. Garvan, Esq.
                                            Johnson, Webbert & Young, L.L.P.
                                            160 Capital Street, P.O. Box 79
                                            Augusta, Maine 04332-0079
                                            (207) 623-5110
                                            dwebbert@johnsonwebbert.com
                                            cgarvan@johnsonwebbert.com

                                            *Attorneys for Plaintiff*

## Certificate of Service

I hereby certify that on November 3, 2016 I electronically filed this with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

Susan P. Herman, Deputy Attorney General
Susan.herman@maine.gov

Kelly L. Morrell, Assistant Attorney General
kelly.l.morrell@maine.gov

Date: November 3, 2016                          /s/ David G. Webbert